**The document below is hereby signed.**

**Dated: July 6, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JANE KALTENHEUSER, | ) | Case No. 12-00245 |
| | ) | (Chapter 11) |
| Debtor. | ) | For publication in West's |
| | ) | Bankruptcy Reporter |

MEMORANDUM DECISION
REGARDING GRINNELL STATE BANK'S MOTION TO RECONSIDER

Grinnell State Bank has moved pursuant to Fed. R. Bankr. P. 9023 to have the court reconsider its oral decision of June 1, 2012. In that decision, the court continued the hearing on Grinnell State Bank's motion for relief from the automatic stay with respect to real property located at 1021 South 3rd Street, Polk City, Iowa, after determining that there was a reasonable likelihood the debtor would prevail at the final hearing.[1] The debtor did not file a response to Grinnell State Bank's motion.

I

Because the court recited the facts related to this proceeding in some detail in its oral decision of June 1, 2012,

_____

[1] The final hearing is scheduled for July 17 and 18, 2012.

the facts will be only briefly related here.  Grinnell State Bank ("Bank") holds, as successor in interest to Polk County Bank, recorded mortgages against the property located in Polk City, Iowa, known as the Kaltenheuser Farm.  Grinnell State Bank also holds an executed Trustee Warranty Deed and Individual Trustee's Affidavit, amounting to a deed in lieu of foreclosure, for the Kaltenheuser Farm.  The deed in lieu of foreclosure was executed in connection with a Settlement Agreement and Release between Grinnell State Bank on the one hand, and, on the other hand, the Jane W. Kaltenheuser Revocable Trust, Jane Kaltenheuser (the debtor in this case), and others.  The Settlement Agreement was approved pursuant to an order entered by the Iowa District Court for Polk County on August 20, 2010.  The Settlement Agreement required a payment of $1.1 million to the Bank by January 31, 2012, and if the full amount was not paid by that date, the escrow agent could immediately record the deed to convey the Kaltenheuser Farm to the Bank.

January 31, 2012 came and went without the debt being paid. At that point, the Bank was entitled to record the deed in lieu of foreclosure.  However, before the Bank undertook to record the deed, the Jane W. Kaltenheuser Revocable Trust (a revocable trust of Jane Kaltenheuser that held title of record to the Kaltenheuser Farm) filed a bankruptcy petition in this court, and the Bank chose not to record the deed.  The Trust's bankruptcy

case was dismissed by order entered on April 5, 2012, because the Trust was not eligible to be a debtor in bankruptcy.  *See* Case No. 12-00058.  On April 3, 2012, Jane Kaltenheuser filed a chapter 11 bankruptcy petition, thereby commencing the present case.  She also revoked the Jane W. Kaltenheuser Revocable Trust and thus enjoyed the Trust's position of being the title owner of record of the Kaltenheuser Farm.

The Bank filed a motion for relief from the automatic stay with respect to the Kaltenheuser Farm on April 13, 2012, on the basis that it had sole ownership of the property and that the debtor had no interest in the property.  At the preliminary hearing on the motion, the debtor raised the defense that, as a debtor in possession entitled under 11 U.S.C. § 1107(a) to exercise the powers of a trustee, she could avoid the transfer of the Kaltenheuser Farm to the Bank pursuant to 11 U.S.C. § 544(a)(3) because a hypothetical purchaser would not have notice of the unrecorded deed in lieu of foreclosure or the Settlement Agreement.

For the reasons that follow, the Bank's motion to reconsider will be denied.

                                II

This motion to reconsider will be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e), which is incorporated in Fed. R. Bankr. P. 9023.  The court may grant a

3

motion to alter or amend a judgment when it finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam); *In re GB Herndon Assocs., Inc.*, 459 B.R. 148, 153 (Bankr. D.D.C. 2011).  In addition, "the reconsideration and amendment of a previous order is an unusual measure," *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 59 (D.D.C. 2003), and motions to reconsider under Rule 59(e) "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

A

Grinnell State Bank argues that a trustee would not be able to avoid the deed in lieu of foreclosure because, under Iowa law, the debtor would be charged with notice of the unrecorded deed in lieu of foreclosure and the Settlement Agreement.  According to the Bank, a reasonable person, upon learning of the recorded mortgages, would have a duty to inquire further of Grinnell State Bank and that such inquiry would lead to the discovery of the deed in lieu of foreclosure and the Settlement Agreement. Specifically, Grinnell State Bank envisions the following scenario:

4

> [T]he Mortgages are clearly in the public chain of title. Therefore, any information a purchaser could reasonably acquire as a result of the Mortgages, also constitutes constructive knowledge. A reasonable inquiry regarding the Mortgages would lead the purchaser to the Bank. The Bank would have informed the purchaser about the litigation in the Iowa District Court and about the existence of the Settlement Agreement.

Motion to Reconsider ¶ 25.

Iowa law establishes "that to be a good faith purchaser for value, one must show he made the purchase before he had notice of the claim of another, express or implied." *Janssen v. N. Iowa Conference Pensions, Inc.*, 166 N.W.2d 901, 908 (Iowa 1969) (quoting *Hayne v. Cook*, 109 N.W.2d 188, 197 (Iowa 1961)). Moreover,

> It is a well settled general rule, in determining whether a purchaser had notice of outstanding equities or unrecorded interests so as to preclude him from being entitled to protection as a bona fide purchaser, that if he has knowledge of circumstances which, in the exercise of common reason and prudence, ought to put a man upon particular inquiry, he will be presumed to have made inquiry, and will be charged with notice of every fact which such suggested investigation would in all probability have disclosed had it been properly pursued. The purchaser may not act in contravention to the dictates of reasonable prudence, or refuse to inquire when the propriety of the inquiry is naturally suggested by circumstances known to him.

*Raub v. Gen. Income Sponsors of Iowa, Inc.*, 176 N.W.2d 216, 220 (Iowa 1970) (quoting 55 Am. Jur, Vendor and Purchaser, § 697, at 1075).

The Bank has not shown that under Iowa law a recorded mortgage is the type of circumstance that ought to put a person

upon "particular inquiry." The motion relies heavily on *Petersen v. Olson*, 112 N.W.2d 874 (Iowa 1962), which, according to the movant, is the "[m]ost notable" Iowa case on the issue. Motion to Reconsider ¶ 27. In that case, Petersen obtained a loan from a friend, Mabel Bennett, to purchase land. He deeded the land to Bennett and entered into an agreement whereby he could repurchase the land upon satisfying the loan. After Bennett's death, Petersen filed a statement in the office of the recorder which set forth in part:

> I purchased this real estate . . .[T]itle was later taken by me under said contract by deed, but due to the fact that I was without funds to settle for the land under the contract and the required money was furnished by Mabel Bennett to me in the amount of $2000.00 the land was later deeded by me to Mabel Bennett for security as an equitable mortgage and to be reconveyed by Mabel Bennett to me at any time I paid the sum secured which arrangement yet persists.

*Petersen v. Olson*, 112 N.W.2d at 877. Bennett's heirs claimed ownership to the land free and clear of Petersen's agreement with Bennett. The court rejected this contention, explaining that the recorded statement put the heirs on constructive notice of the facts set out in the statement. *Id.* at 881.

The Bank argues that in *Petersen*,

> the court noted that because of the filing of the notice of mortgage, the heirs had constructive knowledge of the <u>unrecorded</u> right to purchase the land to which the heirs' interests were subject . . . As in *Petersen v. Olson*, a review of the public record here would clearly reveal the Mortgages, which, with minimal effort, would lead a purchaser to the Bank and, thereby, discovery of the Warranty Deed.

6

Motion to Reconsider at ¶ 27.  However, in *Petersen*, the recorded statement made specific reference to the agreement to repurchase, stating that the land was "to be reconveyed by Mabel Bennett to me at any time I paid the sum secured which arrangement yet persists."  In this case, the mortgages make no reference to the Settlement Agreement or deed in lieu of foreclosure.  As a result, *Petersen* does not support the Bank's assertion that the recorded mortgages alone create a duty of inquiry.

    The Bank also points to *Coder v. McPherson (In re Coder)*, 152 F. 951, 954 (8th Cir. 1907), as holding that a purchaser is deemed to have knowledge of what a recorded mortgage might lead the purchaser to discover.  *Coder* was not even a case arising under Iowa law or involving the issue of a purchaser being on inquiry notice.  Instead, it was a preference action in which the issue was whether a bank, in obtaining mortgages to secure a pre-existing debt, had reasonable cause to believe that the mortgages were intended to give a preference.  In any event, the *Coder* decision's discussion of inquiry notice only reinforces this court's view that a hypothetical creditor would not have been put on inquiry notice of the deed in lieu of foreclosure.  The *Coder* court found that the bank should be charged with knowledge of the extent of the debtor's indebtedness because the bank was faced with various inconsistent and questionable representations from the debtor concerning the amount of his indebtedness.  Most

7

              Document - Motion to Reconsider    Page 8 of 11

notably, the bank knew that the debtor had given William Arts a mortgage to secure a $98,503.32 debt but that 42 days later, when the bank obtained its mortgages, the debtor was representing that he did not owe Arts more than $60,000 to $70,000.[2]  The court found that this "would have stimulated a creditor of reasonable prudence to an investigation of the actual amount of this debt." *Id.* at 954.

The Bank's interpretation of the *Coder* case goes too far, suggesting that it was the mere existence of a mortgage that created the bank's duty of inquiry.  Rather, the court focused on the debtor's inconsistent statements to the bank, which "demonstrated the fact that [the debtor] had not truthfully set forth his indebtedness, and constituted full notice to this bank that his indebtedness was more than he had declared it to be."

---

[2]  In addition, the debtor gave the bank a financial statement in December 1903 showing assets worth $246,750 and debts of only $36,000 but gave the bank a financial statement six months later (when the bank obtained its mortgages) which showed assets worth $254,740 (an increase of less than $9,000) but debts of $195,400 (an increase of $159,400) with no explanation of why the debtor's assets had increased by less than $9,000 in a span of six months despite a $159,400 increase in debt.  Moreover, that latest financial statement showed debts that exceeded 75% of the listed value of his assets (principally real estate), and it was common knowledge that with only great difficulty could such assets, worth less than 75% of the debts, be converted into money sufficient fully to pay the debts.  Together with the obvious discrepancy regarding the Arts mortgage, the bank had "[n]otice of facts that would incite a man of ordinary prudence to an inquiry under similar circumstances," and constituted "notice of all the facts which a reasonably diligent inquiry would disclose."  *Coder*, 152 F. at 953.

*Coder v. McPherson*, 152 F. at 954.  Grinnell State Bank has not pointed to any suspicious facts with respect to the mortgages in this case that would place a hypothetical purchaser on inquiry notice.

Grinnell State Bank assumes that a bona fide purchaser would always inquire of a bank regarding the amount of any existing mortgage the bank holds against the property.  A purchaser may accept an owner's information regarding how much is owed on an existing mortgage.[3]  The purchaser's record notice of that mortgage gives the purchaser notice that the asset will be subject to whatever is owed on the mortgage, but that record notice does not impose on the purchaser a duty to make inquiry of the mortgagee when the purchaser is willing to take the risk that the owner's representations as to the amount owed are in error.

B

Moreover, even if a properly recorded mortgage creates a duty of inquiry, Grinnell State Bank has not shown that an investigation of the Bank's mortgages "would in all probability have disclosed" the existence of the Settlement Agreement and deed in lieu of foreclosure.  *See Raub v. Gen. Income Sponsors of*

---

[3]  A purchaser may purchase property subject to existing liens, with the seller providing financing under which existing lien amounts are a credit against the financing, thus often making the exact amount owed on existing liens irrelevant.  Or a purchaser may simply trust the seller's word regarding the amounts owed.

9

*Iowa, Inc.*, 176 N.W.2d at 220.

The Bank's argument relies on a generous dose of speculation, namely, that a purchaser who inquires of Grinnell State Bank as to the recorded mortgages would necessarily learn about the litigation, the ensuing Settlement Agreement, and the deed in lieu of foreclosure. The Bank has not identified any evidence or case law that suggests that when someone asks a bank about the amount owed on a mortgage, the bank will necessarily offer all of the information it has on the subject property and not simply confine its response to the amount owed on the mortgage. *See Webster v. Scott & Reid Gen. Contractors, Inc. (In re NETtel Corp.)*, 458 B.R. 782, 790 (Bankr. D.D.C. 2011) (applying Texas law and rejecting arguments that a hypothetical bona fide purchaser would have had inquiry notice of a constitutional lien because all of the arguments "rely on speculative assumptions regarding what a purchaser would have done in making a purchase.").

C

The Bank also argues that "no trustee — debtor-in-possession or otherwise — would seek to use the powers under Bankruptcy Code § 544(a)(3) to avoid the Warranty Deed. Such an action would be feckless given that the trustee cannot trump the Mortgages." Motion to Reconsider ¶ 22. This argument is without merit. The debtor has raised § 544(a)(3) as a defense to the Bank's claim of

10

ownership, and that is the issue before the court. If the mortgage debt exceeds the value of the property, and the debtor cannot propose a confirmable reorganization plan, the Bank could seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2), but the Bank failed to seek relief under § 362(d)(2).

### III

Accordingly, the court still finds that the debtor has a reasonable likelihood of succeeding on her § 544(a)(3) defense and the motion to reconsider will be denied. Grinnell State Bank's arguments with respect to Iowa law do not establish a clear legal error or the need for the court to alter its decision to prevent manifest injustice. An order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification.